NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Department of Labor
No. 2018-0675


APPEAL OF WAYNE PREVE
(New Hampshire Department of Labor)

Argued: June 6, 2019
Opinion Issued: August 22, 2019


Rath, Young and Pignatelli, PC, of Concord (Michael S. Lewis on the brief and orally), for the petitioner.


Getman, Schulthess, Steere & Poulin, P.A., of Manchester (Stephen J. Schulthess on the brief and orally), for the respondent.


HANTZ MARCONI, J.  The petitioner, Wayne Preve, appeals a decision of the New Hampshire Department of Labor (DOL) ruling that he failed to prove that the respondent, the Town of Epsom (Town), violated the New Hampshire Whistleblowers' Protection Act.  See RSA ch. 275-E (2010 & Supp. 2018).  We affirm.

The following facts were found by the DOL or are otherwise derived from the record.  The petitioner has worked for the Town's Police Department since 1997, and has been the Chief of Police since 2004.  On October 16, 2017, an incident occurred between an attorney and a Town police officer at the Circuit Court in Concord.  Specifically, the attorney made a comment to the officer that insinuated the officer was a "sex offender."  The officer later informed the

petitioner of the attorney's comment. The petitioner testified at the DOL hearing that, as a result of this incident, as well as additional alleged incidents between the attorney and the Town's Police Department, the petitioner believed that the attorney posed an "officer safety" issue.

The petitioner decided to file a complaint against the attorney. He collected all of the data relating to the attorney in the police department's computer database. The data included all reports in which the attorney or his family were listed, regardless of whether they were victims, witnesses, or "an accused." The petitioner attached all of this information to a letter of complaint. According to the Board of Selectmen's suspension letter, although these materials included information such as social security numbers, addresses, and birth dates of the attorney and his family, the petitioner did not redact the materials in any way. The petitioner sent these materials to the Judicial Conduct Committee (JCC), rather than the disciplinary body that oversees attorneys, the Professional Conduct Committee (PCC). A copy was also sent to the attorney. The attorney complained to the Town about the petitioner's conduct. He threatened to sue the Town as a result of, among other things, the petitioner's disclosure of private information regarding the attorney and his family.

The JCC returned the materials to the Town, stating that the JCC is not the correct entity with which to file a complaint regarding an attorney. The Town engaged Municipal Resources Inc. (MRI) to investigate the petitioner's conduct. The Town also instructed the petitioner not to re-file the materials with the PCC. MRI issued a report concluding that some of the petitioner's actions were improper and may have violated certain statutes. The Town subsequently disciplined the petitioner by suspending him for one week without pay and requiring him to attend training.

After appealing this disciplinary action through the Town's internal procedures, the petitioner filed a complaint with the DOL, arguing that the Town wrongfully retaliated against him for reporting the attorney in violation of the Whistleblowers' Protection Act. See RSA ch. 275-E. After a hearing, the DOL concluded that the petitioner failed to prove that the Town unlawfully retaliated against him. The petitioner filed an application for rehearing, which was denied. This appeal followed.

RSA chapter 541 governs our review of the DOL's decision. See RSA 275-E:4, II (2010). We will not set aside the DOL's decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. Appeal of Seacoast Fire Equip. Co., 146 N.H. 605, 607-08 (2001); see RSA 541:13 (2007). The DOL's findings of fact are presumed prima facie lawful and reasonable. RSA 541:13. In reviewing the DOL's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but rather, to determine whether the

2

findings are supported by competent evidence in the record.  See Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014).  We review the DOL's rulings on issues of law de novo.  See id.

The petitioner argues that the DOL erred by failing to acknowledge that he produced direct evidence of retaliation.  Had the DOL correctly found that he produced such evidence, the petitioner argues, it would have been required to apply the "mixed motive" analysis to his claim, rather than the "pretext" analysis which it actually applied.

We have noted that "the federal standards used to evaluate retaliation claims under Title VII of the Civil Rights Act are useful in resolving claims under RSA chapter 275-E.  Under federal law, there are two basic ways for an employee to prove retaliation: the 'pretext' approach and the 'mixed motive' approach."  Appeal of Hardy, 154 N.H. 805, 812 (2007) (quotation and brackets omitted).  The quality of the evidence determines which approach applies.  Appeal of Montplaisir, 147 N.H. 297, 300 (2001).  "If the employee produces direct evidence that retaliation played a substantial role in a particular employment decision, then the 'mixed motive' approach applies."  Id. at 301 (quotations omitted); accord Hardy, 154 N.H. at 814.  If the employee does not produce such evidence, or if there is only circumstantial evidence of retaliation, the "pretext" approach applies.  See Montplaisir, 147 N.H. at 300-01.

In Hardy, we outlined in detail the characteristics of, and the burdens under, the two approaches as follows:

> Under the "pretext" . . . scheme, the employee bears the initial burden of establishing a prima facie case of unlawful conduct.  To establish a prima facie case of retaliation, the employee must demonstrate that: (1) he engaged in an act protected by RSA chapter 275-E; (2) he suffered an employment action proscribed by RSA chapter 275-E; and (3) there was a causal connection between the protected act and the proscribed employment action.
>
> Establishing a prima facie case of retaliation creates a presumption that the employer unlawfully retaliated against the employee.  This presumption places a burden upon the employer to rebut the prima facie case — i.e., the burden to produce evidence that the adverse employment action was taken for legitimate, non-retaliatory reasons.  The burden placed upon the employer is only a burden of production; the employee retains the burden of persuasion.
>
> If the employer satisfies its burden of production, the presumption raised by the prima facie case is rebutted and drops from the case.  The employee then has the opportunity to show

3

that the employer's [proffered] reason was not the true reason for the adverse employment action and that retaliation was.  The employee may do this either indirectly by showing that the employer's stated reasons were not credible, or directly by showing that the adverse employment action was more likely motivated by retaliation.  Under the "pretext" approach, the employee retains the ultimate burden of persuading the trier of fact that he or she was the victim of unlawful retaliation.

If the employee produces direct evidence that retaliation played a substantial role in a particular employment decision, then the "mixed motive" approach applies.  If the trier of fact believes the employee's direct evidence, the burden of persuasion shifts to the employer to show that despite the retaliatory animus, it would have made the same adverse employment decision for legitimate, non-retaliatory reasons.  Evidence is considered to be direct if it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision.  Thus, so long as the employee can meet the evidentiary burden required by the "mixed motive" approach, then the burden of persuasion remains with the employer.

Hardy, 154 N.H. at 812-13 (quotation and brackets omitted); accord Montplaisir, 147 N.H. at 300-02.

The DOL ruled that the petitioner's activity was protected under RSA chapter 275-E,[1] but also found that the petitioner had not presented any evidence that "suggests animus on the part of the [Town] or retaliation based on the [petitioner's] protected reporting."  Thus, the DOL essentially found that the petitioner had not produced "direct evidence that retaliation played a substantial role" in the Town's decision to discipline him.  Montplaisir, 147 N.H. at 301 (quotation omitted); accord Hardy, 154 N.H. at 814.  Because the DOL found that, in these circumstances, "the evidence presented is considered circumstantial," the DOL applied the pretext analysis.  (Emphasis added.)  Under this analysis, the DOL concluded that, while the petitioner established a prima facie case of unlawful retaliation, the Town effectively rebutted it, and the petitioner failed to show that the Town's proffered legitimate, non-retaliatory reason for his suspension was pretextual.

The petitioner argues that the DOL erred in applying the pretext analysis to his claim.  He submits that the letter he received from the Town informing him of his suspension contains direct evidence of retaliatory intent.  Specifically, he contends that the following phrase in the letter constitutes direct evidence of retaliatory intent: "You signed the letter that was ultimately

---

[1] The Town does not challenge this ruling on appeal.

4

mailed, and you were involved in writing it." Because the DOL found that the petitioner's mailing of the complaint was protected under RSA chapter 275-E, the petitioner contends that this letter contains direct evidence that his suspension was based, at least in part, on his participation in protected activity. The petitioner also argues that the Town's instruction that he not re-file his complaint and the appended materials with the PCC constitutes additional direct evidence of retaliation. Because he produced direct evidence of retaliation, the petitioner argues, the DOL was required to analyze his claim under the mixed motive analysis rather than the pretext analysis. He notes that if the DOL had applied the mixed motive analysis, the Town, not he, would have borne the burden of persuasion.

We do not agree that the DOL erred. Even assuming that the record contains some direct evidence connecting the petitioner's discipline to his mailing of the complaint to the JCC, "[s]imply because [the petitioner] introduced some direct evidence of a retaliatory reason for the [challenged employment decision] does not mean that the [DOL] was necessarily precluded from applying the pretext analysis." Hardy, 154 N.H. at 814. To the contrary, we have consistently explained that the mixed motive approach applies "[i]f the employee produces direct evidence that retaliation played a substantial role" in the challenged employment decision. Id. (quotation omitted); accord Montplaisir, 147 N.H. at 301. Thus, contrary to the petitioner's argument, the threshold question in this case is not whether the evidence contains anything that "directly reflect[s] the alleged animus and bear[s] squarely on the contested employment decision." Hardy, 154 N.H. at 813 (quotation omitted). Rather, the question is whether there is direct evidence that retaliation played a substantial role in the challenged discipline. Id. at 814.

The DOL found that "[t]he [petitioner] failed to show any persuasive evidence or testimony that the [Town]'s motivation for his suspension was for his protected reporting of [the attorney]," and that "[n]othing in the evidence presented suggests animus on the part of the [Town] or retaliation based on the [petitioner]'s protected reporting." The DOL also noted that:

> The [Town], from the very beginning of this issue, focused on the potential impropriety and/or criminality of the [petitioner]'s actions. [The Town] made no reprimand or discipline simply because the [petitioner] reported [the attorney] to the JCC, or for his error in sending it to the JCC rather than the PCC. [The Town] hired a third party to investigate the [petitioner]'s actions. As a result of the report issued by MRI for improper actions and potential criminal conduct on the part of the [petitioner], the [Town] disciplined the [petitioner].

Thus, it is clear from the decision that the DOL found the petitioner had not produced evidence, direct or otherwise, that intent to retaliate against the

5

petitioner for filing a complaint regarding the attorney played a substantial role in the Town's decision to discipline him. Instead, the DOL found that the Town's concerns regarding the potential impropriety of the petitioner's inclusion of private information obtained from the Town's confidential database with the complaint were the primary motivation for the discipline.

The record supports the DOL's conclusion. The phrase in the suspension letter, "You signed the letter that was ultimately mailed, and you were involved in writing it," is immediately followed by this phrase: "<u>and gathering documents to be appended to it, all without any thought or concern about [the attorney] and his children's privacy rights</u>." (Emphasis added.) The suspension letter also states:

> [The petitioner] participated in gathering and printing these police records which were sent along with the complaint. [The petitioner] did not redact [them] despite the fact that they included not only personally identifying information about [the attorney], such as his social security number, address, birth date, and birthplace; but also included such information about his children.

The suspension letter referred to the police records as "unrelated" to the interaction between the attorney and the officer at the Circuit Court. The suspension letter further explained that the petitioner's conduct was "a potential violation of various criminal statutes" as well as the Town's Code of Ethics, and that the petitioner's conduct had "potentially exposed the Town to substantial civil liability." Furthermore, as the DOL emphasized, the Town did not immediately discipline the petitioner upon learning that he filed a complaint regarding the attorney with the JCC; rather, the Town engaged a third-party, MRI, to conduct an investigation into the petitioner's actions before imposing discipline. In sum, the record supports the DOL's conclusion that there was not direct evidence in the record that retaliation played a substantial role in the challenged employment decision. Thus, we cannot say the DOL erred by applying the pretext analysis, nor in ruling that the petitioner failed to prove that the Town violated the Whistleblowers' Protection Act.

<u>Affirmed</u>.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.